IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES BILLOPS, SR., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0530 |
| | § | |
| SANDRA SANDOVAL, P.A.C., *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case arises from the 2003 death of Charles Billops, II ("Billops") while in the custody of the Texas Department of Criminal Justice ("TDCJ"). Plaintiff Charles Billops, Sr., individually and as the representative of the estate of Billops ("Plaintiff"), filed a civil rights complaint under Title 42 U.S.C. § 1983 ("§ 1983") alleging prison medical officials were deliberately indifferent to Billops' serious medical condition.[1] Pending before the Court is Defendants Smith and Lee's Rule 12(c) Motion to Dismiss on the Pleadings for Failure to State a Claim ("Motion to Dismiss") [Doc. # 63].

---

[1] Plaintiff has sued various health care professionals employed by the University of Texas Medical Branch ("UTMB") in their individual capacities. Defendants are Sung Lee, M.D. ("Lee"), Bruce Smith, M.D. ("Smith"), Alma Davis ("Nurse Davis"), Evelyn Skutka ("Nurse Skutka"), Barbara Vance ("Nurse Vance"), Julia Vela ("Nurse Vela"), P.A. Michelle LaStrapes ("P.A. LaStrapes"), and P.A. Sandra Sandoval ("P.A. Sandoval"). Smith and Lee are collectively referred to herein as "Doctor Defendants." Nurse Davis, Nurse Skutka, Nurse Vance, Nurse Vela, P.A. LaStrapes, and P.A. Sandoval are collectively referred to herein as "Nurse/P.A. Defendants." The Doctor Defendants and the Nurse/P.A. Defendants are collectively referred to herein as "Defendants." *See* Second Amended Complaint, at 1.

Plaintiff has filed a Response [Doc. # 64]. Having considered the parties' submissions and the applicable legal authorities, the Court concludes the Motion to Dismiss should be **denied**.

I.     **PLAINTIFF'S FACTUAL ALLEGATIONS**

In September 2002, Billops was arrested for breaking into a home and stealing a video game system. Pursuant to a plea agreement, Billops pled guilty and was sentenced to two years imprisonment. In January 2003, Billops began serving his sentence in TDCJ's Clemons Unit in Brazoria, Texas ("Clemons Unit"). Medical records indicate Billops stood 6' 2" and weighed 190 pounds when admitted to the Clemons Unit. Second Amended Complaint, ¶¶ 14-17.

During Billops' incarceration, UTMB was responsible for providing medical services to the inmates housed in the Clemons Unit. The Doctor Defendants were the supervising physicians at the Clemons Unit with the ultimate responsibility to oversee inmate healthcare. The Doctor Defendants supervised the Nurse/P.A. Defendants. P.A. LaStrapes and P.A. Sandoval are physician's assistants under the Doctor Defendants' supervision. *Id.*, ¶¶ 16, 36-37.

On March 7, 2003, Billops saw Nurse Vance. Billops complained of a sore throat and a runny nose. Nurse Vance's records indicate Billops had sinus problems, for which she recommended an over-the-counter antihistamine. *Id.*, ¶ 18.

On April 2, 2003, Billops saw Nurse Skutka regarding his sinus congestion. Billops' weight had dropped to 172 pounds. Nurse Skutka did not refer Billops to a physician's assistant or a physician. Nurse Skutka recommended another over-the-counter antihistamine. *Id.*, ¶ 19.

On April 7, 2003, Billops submitted a sick request form indicating he had a headache and blood present in his nasal discharge. P.A. Sandoval reviewed this form. P.A. Sandoval declined to refer Billops to a physician nor did she order any lab tests. P.A. Sandoval prescribed Drixoral, an over-the-counter cold medication. *Id.*, ¶ 20.

On April 9, 2003, Billops submitted a second sick request form complaining of a toothache, an ear ache, and that his nose was congested with blood and mucus. Ms. Salinas reviewed this request. Ms. Salinas' notes indicate Billops was seen on April, 10, 2003, but Billops' medical records do not reflect this visit. *Id.*, ¶ 21.

Nurse Skutka saw Billops again on April 11, 2003. Billops' weight had dropped to 160 pounds and he was running a fever. Nurse Skutka's examination revealed the following: cold symptoms, ear pain, headaches, nasal congestion, nasal discharge, tearing, dried blood in the ear canals of both ears, reddened ear canals, bloody nasal discharge, and difficulty swallowing. Nurse Stutka phoned P.A. LaStrapes. P.A. LaStrapes prescribed Bactrim for 15 days and Acetasol ear drops, but no physician's assistant or physician saw Billops or ordered any tests. *Id.*, ¶ 22.

Shortly thereafter, Billops was placed in solitary confinement for disciplinary reasons. Nurse Vance performed a pre-segregation evaluation on April 16, 2003. Despite P.A. LaStrapes' April 11, 2003 orders, Nurse Vance's notes do not refer to any prescriptions or Billops' medical problems. *Id.*, ¶ 23. Nurse Vela's notes indicate Billops was admitted to solitary confinement on April 24, 2003 without any prescription medication. By April 25, 2003, Billops condition deteriorated – his weight had dropped to 149 pounds. On that date, Billops was taken to the medical department because he was too weak to shower. Nurse Vela saw Billops again and referred him to the mental health department. Billops did not see a physician's assistant or a physician. P.A. Sandoval reviewed Billops' chart. P.A. Sandoval ordered lab work but never actually examined Billops nor did she prescribe any medication or contact her supervising physician. *Id.*, ¶¶ 23-24.

On April 29, 2003, Billops again visited the medical department and saw Nurse Davis. He weighed 138 pounds. Nurse Davis spoke with a P.A. Sandoval. P.A. Sabdoval ordered lab tests. Billops was sent to his cell. Prison security then contacted Nurse Skutka about Billops' condition. Nurse Skutka consulted with P.A. Sandoval. P.A. Sandoval simply repeated her earlier lab work orders. *Id.*, ¶ 25.

On April 30, 2003, Billops was escorted to the medical department for lab work. Billops was unable to stand. An ambulance transported Billops to UTMB's emergency

room.  Billops died later that day.  An autopsy indicated Billops died from an intracerebral abscess caused by bacterial sinusitis.  *Id.*, ¶¶ 26-27.

## II.     STANDARDS FOR RULE 12(c) MOTION TO DISMISS

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.*  (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).  The Fifth Circuit applies the same standard for a motion to dismiss under Rule 12(c) as it does for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Great Plains Trust,* 313 F.3d at 313 n.8; *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

A district court may not dismiss a complaint under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Manguno v. Prudential Prop. and Casualty Ins.*

*Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (citing *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). Thus, the Court must determine whether the complaint states any valid claim for relief in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Manguno*, 276 F.3d at 725. However, the plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Collins*, 224 F.3d at 498. In sum, "[a] Rule 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. On the other hand, [] conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002) (footnote omitted).

### III.   DISCUSSION

Plaintiff asserts causes of action against Defendants under § 1983 for violations of civil rights guaranteed to Billops by the Eighth and Fourteenth Amendments to the United States Constitution. "Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. It is not

itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (internal citations omitted). "'Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983.'" *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, proscribes cruel and unusual punishment. *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004). It is well-settled that prison officials inflict cruel and unusual punishment if they are deliberately indifferent to an inmate's serious medical needs. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff contends the Doctor Defendants are liable under § 1983 because, by failing to supervise their medical staff (a duty imposed by state law), the Doctor Defendants were deliberately indifferent to Billops' serious medical condition. The Doctor Defendants move to dismiss this case for two reasons. First, the Doctor

Defendants assert that they may not be held vicariously liable under § 1983 for the actions of their staff.  Next, they claim qualified immunity from Plaintiff's claims for damages against them in their individual capacities.  For the reasons discussed below, the Court denies the Motion to Dismiss.

**A.      Liability Theories Against Doctor Defendants**

The Doctor Defendants argue that Plaintiff has failed to assert facts showing that they, as supervising doctors, were personally involved in the alleged improper medical treatment.  The Doctor Defendants contend that they may not be held vicariously liable for their staff's acts or omissions under § 1983.  The Doctor Defendants thus reason that, because Plaintiff's civil rights claim is based on their positions as supervisors of the Nurse/P.A. Defendants, Plaintiff has failed to plead a § 1983 claim.  *See* Motion to Dismiss, at 2-3.  The Court concludes that, while the Doctor Defendants' rendition of the law on vicarious liability is correct, their summary of Plaintiff's claim against them is not accurate.  Plaintiff does not contend the Doctor Defendants are vicariously liable for their staff's malfeasance.  Rather, Plaintiff complains of the Doctor Defendants' own malfeasance – namely, the Doctor Defendants' breach of their legal duty to supervise their staff.  Based on the authorities and analysis below, the Court concludes Plaintiff's claim against the Doctor Defendants under § 1983 does not sound in vicarious liability and this ground for dismissal is denied.

**Factual Allegations**.– Plaintiff contends the Doctor Defendants "are liable under § 1983 as a result of their own deliberate personal involvement (or lack thereof) over the care and treatment of inmates at the [Clemons] Unit and their failure to oversee, monitor, and supervise the nurses and physician assistants with whom they entrusted such responsibility." Response, ¶ 8 (citing Second Amended Complaint, ¶¶ 36-39). Plaintiff further asserts that the Doctor Defendants had a statutory duty to supervise P.A. LaStrapes and P.A. Sandoval. *See* Response, ¶ 9. The Court notes that section 204.206 of the Texas Occupations Code obligates a supervising physician to supervise and monitor a subordinate physician assistant.[2]

Plaintiff makes the following allegations against the Doctor Defendants:[3]

- At the time of Billops' death, Drs. Smith and Lee were employed by UTMB working as supervising physicians overseeing the care and treatment rendered by LaStrapes, P.A.C. and Sandoval, P.A.C., respectively. Second Amended Complaint, ¶ 36.

- Despite actual knowledge of Billops' red flag symptoms, his deteriorating condition, and the likely consequences if such symptoms were not treated, none of the Individual Defendants took any steps to diagnose Billops' problems or effectively treat them. No doctor ever saw Billops while he was at the Jail, nor did any physician ever review or sign off on any of his charts or records.

---

[2]  A supervising physician also retains legal responsibility for a subordinate physician assistant's patient care. TEX. OCC. CODE § 204.207.

[3]  Plaintiff concedes supervisors cannot be held vicariously liable under § 1983. Response, ¶ 6.

> The Individual Defendants' deliberate indifference to Billops' medical needs resulted in his slow and agonizing death. *Id.*, ¶ 28.

- While it was the Doctor Defendants' ultimate responsibility to oversee the care of inmates and properly supervise the Nurse/P.A.C. Defendants, the Doctor Defendants did absolutely nothing to monitor or supervise the care and treatment afforded Billops. *Id.*, ¶ 37.

Plaintiff alleges, based on the foregoing, that the Doctor Defendants are not entitled to qualified immunity as their conduct was not objectively reasonable in light of the law clearly established at the time of Billops' death. The Doctor Defendants were well aware that Billops was entitled to receive adequate medical care. Despite such, they wholly failed to monitor and oversee the practices of and the care rendered by the Nurse/P.A.C. Defendants, and improperly delegated the entire care and treatment of the inmates to non-physicians. No competent physician would have acted as they did. *Id.*, ¶ 38.

**Legal Standard and Analysis**.– "To state a claim under § 1983, plaintiffs must allege two elements: first, that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). "[N]ot all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth

Amendment." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 202 (1989) (internal quotation marks and citation omitted).

> The state allocates responsibility under state law, but it is a *federal* decision as to whether its assignments of duties and authority create action under color of state law. A state employee's breach of a state-law duty to act can give rise to § 1983 liability, but only if, as a matter of federal law, the duty is of such nature as to render her responsible for the constitutional harm when breached.

*Rains*, 66 F.3d at 1408-09.

"Liability attaches under § 1983 only where a defendant, acting under color of state law, causes a person to be deprived of a federally secured right or interest. This requirement that action be under color of state law is as essential as it is rigorous; a person does not act under color of state law solely by virtue of her relationship to the state, but depending on her function-*i.e.*, the nature of her challenged conduct." *Rains*, 66 F.3d at 1411 (citing *Polk County v. Dodson,* 454 U.S. 312, 319-20 (1981), and other authorities). Even if a person is affiliated with the state, "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County,* 454 U.S. at 317-18 (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)); *accord Rains*, 66 F.3d at 1411. The *Rains* court stated that "to determine which state-law duties are such that a breach is under color of state law," courts must

"ask whether a particular duty is of such a nature that breach by a defendant represents a misuse of state authority–*i.e.*, whether the failure to act in accordance with the state-law duty entailed an exercise of power made possible only because the defendant was clothed with the authority of law." *Rains*, 66 F.3d at 1411-12.

Generally, supervisory officials cannot be held vicariously liable under § 1983 for the misconduct of a subordinate. *See, e.g., Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Only direct acts or omissions of government officials, not the acts of subordinates, will give rise to § 1983 liability. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). The "conceptual difficulty is in deciding when it can be said that there was a conferral of state authority making it possible for a defendant to wield state power in failing to act." *Rains*, 66 F.3d at 1412. The *Rains* court explained in this regard "that state supervisors can be found liable under § 1983 for failing to comply with a state-law duty to act" and "under certain circumstances, a guilty supervisor's inaction may constitute action under color of state law." *Id*. In order for a supervisor to be found to have acted under color of state law, "he must have possessed and exercised state power in failing to act and thereby causing the constitutional injury perpetrated by his subordinate." *Id.* In *Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976),

the court stated that "§ 1983 requires a degree of causation as an element of individual liability, but it does not specifically require 'personal participation.'" *Id.* at 831.

Not "every person who violates state law is amenable to a federal claim." *Rains*, 66 F.3d at 1408. The issue is "whether state law has reposed in a defendant enough responsibility for the underlying conduct that she can be said to have caused the injury herself." *Id.* The *Rains* court clarified that "[w]here personal participation is absent, 'a supervisory defendant is [still] subject to § 1983 liability when he breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" 66 F.3d at 1412 (quoting *Sims*, 537 F.2d at 831). Direct supervisory liability requires analysis under a three-part test: "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) such failure to train or supervise amounted to gross negligence or deliberate indifference." *Id.* at 1412-13 (quoting *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)).

"[W]here a supervisory official breached a state-law duty with deliberate indifference toward a resulting constitutional injury, he misused the state authority conferred on him to supervise and control his subordinates. The supervisor's failure to act, coupled with his deliberate indifference, was tantamount to a conscious decision to allow the alleged constitutional injury to occur or persist." *Id.* at 1413. The reason

for this result is that "because the state official was responsible for preventing the constitutional injury[,] his failure to do so rendered him directly liable for the deprivation that his subordinate perpetrated. . . . [The supervisor's] failure to control his subordinate rendered him responsible for the resulting subordinate misconduct – essentially he was a legal participant." *Id.*

In *Rains*, the court of appeals adopted the distinctions drawn years ago in *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir. 1984), regarding the "legal authority to control" requirement in a § 1983 failure to supervise claim. In *Howard*, two prisoners died after prison officials confined them to a "hot box," a disciplinary measure for recalcitrant prisoners. *Howard,* 723 F.2d at 1208. The plaintiffs asserted "failure to supervise" civil rights claims against various prison officials, including the Director of the Louisiana Department of Corrections and two "sanitarians" who had a statutory duty to inspect the prison. *Id.* at 1209. The court reached different results as to the Director and the sanitarians after examining the defendants' respective authority to control the hazardous condition causing the deprivation. *See id.* at 1212-14.

The claim against the Director was that he breached his duty to inspect the prisons or otherwise to delegate the task to subordinates. Despite his position as "Director," the court of appeals could find "no authority [for the Director] to remedy any deficiencies he might observe, beyond reporting them to the Governor." *Id.* at

1212; *Rains*, 66 F.3d at 1414. Accordingly, since there was "no evidence supporting 'a causal connection between the Director's failure to report a condition in the prison to the Governor and the failure of the prison Board of Governors to change that condition,' [the court in *Howard*] concluded that 'the Director's dereliction, if any, did not have a sufficient causal connection to the constitutional deprivation to establish liability under § 1983.'" *Rains*, 66 F.3d at 1414 (quoting *Howard*, 723 F.2d at 1212). For this reason, the *Rains* court concluded that a teacher who allegedly knew of sexual abuse of a student, and thus had a state law duty to report that abuse to authorities, did not act under color of state law and was not liable under § 1983. This result flowed from the fact that this teacher had no authority to correct the situation or to exercise control over the alleged abuser, and thus the requisite causal nexus was absent. *Rains*, 66 F.3d at 1416.

The Fifth Circuit's analysis concerning the sanitarians, however, "compelled a different result" in *Howard*. *Rains*, 66 F.3d at 1414. The sanitarians "stated in their depositions that, if they had seen and inspected the cells, they would have forbidden their use immediately; their failure to inspect thus had a clear causal connection to the deaths of [the plaintiffs]." *Id*. (quoting *Howard*, 723 F.2d at 1213). The sanitarians thus "acknowledged that they had a right of control over the persons who committed the deprivation, in that they could have forbidden the prison officials from using the hot

boxes." *Id.* The *Rains* court concluded that "the sanitarians had legal authority to control the prison personnel with respect to their use of the hot box, and therefore their failure to inspect, together with their corresponding failure to prevent the constitutional harm, was action under color of state law." *Id.*

At this motion to dismiss stage, the Court cannot conclude that there is no set of facts that would entitle Plaintiff to relief on his § 1983 claim against the Doctor Defendants. The Doctor Defendants in the case at bar are akin to the sanitarians in *Howard*. Plaintiff has essentially alleged that (1) the Doctor Defendants were the persons ultimately responsible for Billops' treatment; (2) the Doctor Defendants had the legal authority *and* a duty to supervise their nursing and P.A. staff; (3) despite their duty, the Doctor Defendants entirely failed to supervise their staff's treatment of Billops, and thus were deliberately indifferent to his care; and (4) such deliberate indifference to Billops' serious medical condition for approximately two months caused Billops' death. The Court cannot conclude that there are no set of facts to support Plaintiff's § 1983 claim against the Doctor Defendants for failure to supervise the Nurse/P.A. Defendants. The Doctor Defendants' motion to dismiss accordingly is denied.

**B.     Qualified Immunity**

The Doctor Defendants also assert that they are entitled to qualified immunity from Plaintiff's claims. The Court concludes the Doctor Defendants are not entitled to qualified immunity at this stage of the litigation.

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)). First, the Court must decide whether the plaintiff alleged a violation of a clearly established constitutional right. *Id.* A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *see also Collins*, 382 F.3d at 537. Second, a court must address whether the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537. That is, courts must decide whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action. *Id.* (citing *Bazan*, 246 F.3d at 490).

In 2003, at the time of the events in question, it was well-established that a prison doctor's deliberate indifference to serious medical needs of prisoners amounted to cruel and unusual punishment proscribed by the Eighth Amendment. *See Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976). Further, as explained above, in 2003 it was clear that a supervisor could be liable personally for the omissions by his subordinates as to whom he has a duty to supervise and whose actions the supervisor has the ability to control. *See, e.g., Rains*, 66 F.3d 1408-15. Consequently, the Court concludes that Plaintiff has sufficiently alleged the violation of a clearly established constitutional right and dismissal on qualified immunity grounds is improper at this time.

This result pertains also when the Court considers the second prong of the qualified immunity analysis, whether the Doctor Defendants knew or reasonably should have known that the action they were taking within their sphere of official responsibility would violate Billops' constitutional right to adequate medical treatment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The objective reasonableness of the Doctor Defendants' conduct must be assessed in light of factual details not yet available. In sum, the Court concludes this issue involves analysis not appropriate for resolution at this early stage of the proceedings. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456 n.12 (5th Cir. 1994) (en banc) ("Deliberate indifference will often be a fact-laden question"). Therefore, the Court denies at this time the Doctor Defendants' motion to dismiss based on qualified immunity.

## IV.     CONCLUSION AND ORDER

Plaintiff's Second Amended Complaint states a § 1983 cause of action against the Doctor Defendants.  The Doctor Defendants' qualified immunity claim cannot be assessed at this stage of the proceedings.  It is therefore

**ORDERED** that the Doctor Defendants' Rule 12(c) Motion to Dismiss on the Pleadings for Failure to State a Claim [Doc. # 63] is **DENIED**.

SIGNED at Houston, Texas, this **23rd** day of **November 2005.**

_____
Nancy F. Atlas
United States District Judge